IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON CHANCE,<br>No. 804786, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )   Case No. 15-cv-00849-JPG<br>) |
| LEAH HAMMEL,<br>NURSE CALEB,<br>SUSAN CARR,<br>LILA LEE,<br>DR. GUPTA,<br>DR. TARIQ, and<br>DR. VALLABHEN, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Jason Chance is currently housed in the Chester Mental Health Center. His legal status is not entirely clear. The *pro se* complaint indicates that he has been deemed mentally unfit to stand trial, and that he is awaiting proceedings to revoke his probation. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to his medical and psychiatric treatment, and related issues. He also asserts supplemental state law claims under 28 U.S.C. §1367. The complaint is receiving immediate review because Plaintiff contends he is in a "life-threatening" situation, and he seeks "injunctive relief."

Complaints filed by a person who is incarcerated or detained in any facility because they are accused or, convicted of or sentenced for violations of criminal law or the terms and conditions of parole must undergo preliminary review. 28 U.S.C. § 1915A(a), (c). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state

a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**Summary of the Complaint**

According to the complaint, Plaintiff Chance arrived at Chester Mental Health Center ("CMHC") on May 5, 2015.  He suffers from Wolff-Parkinson-White syndrome, a heart condition involving rapid heartbeats due to an extra electrical pathway between the upper and lower chambers of the heart.  (http://www.mayoclinic.org/diseases/conditions/wolff-parkinson-white/basics/definition/con-20043508 (last accessed Aug. 4, 2015)).  After riding for hours in a vehicle without air conditioning, Plaintiff arrived at CMHC with a pulse rate of 180 BPM[1], elevated blood pressure of 160/115, and a fever of 101°—although the nurse who examined him (possibly Nurse Caleb) recorded some lower readings.  According to Plaintiff, despite his requests for immediate medical attention, he was kept waiting by Nurse Caleb and Dr. Susan Carr for approximately an hour before Nurse Caleb saw him.

---

[1] A pulse rate over 100 BPM indicates tachycardia, which can be life-threatening. (http://www.heart.org/HEARTORG/Conditions/Arrhythmia/AboutArrhythmia/Tachycardia-Fast-Heart-Rate_UCM_302018_Article.jsp#mainContent (last accessed Aug. 4, 2015)).

Plaintiff asked Nurse Caleb and Dr. Carr for his medications (Clonidine, Valium and Ativan), as well as fluids for dehydration.  He waited hours for his medications, and then did not receive the proper dosages.  No medication was provided to relieve his high fever.  According to the complaint, it was Dr. Vallabhen who did not give Plaintiff the proper dosage of Valium, thereby causing Plaintiff to go into benzodiazepine withdrawal[2].   Plaintiff similarly claims that he suffered from Clonidine[3] withdrawal and "rebound symptoms."

Plaintiff's allegedly inadequate medical care has continued in one form or another to the present and, from Plaintiff's perspective, all of his ailments and complaints about his care are interrelated (not all of Plaintiff's many complaints of inadequate care are repeated in this summary).  Dr. Tariq delayed prescribing  Protonix or Prevacid for gastric reflux problems.  Dr. Tariq and Dr. Gupta both decreased Plaintiff's dosage of Benadryl for allergy relief and/or anxiety.  During his time at CMHC, Plaintiff has continued to experience a rapid heart rate, pain, anxiety and other symptoms, and he contends his life is in danger.  All defendants allegedly acted "intentionally, maliciously, recklessly and with deliberate indifference" (Doc. 1, p. 18), and/or have not altered course in the face of the ineffective treatment to date.  Dr. Tariq and CMHC Director Leah Hammel have refused to authorize recommended surgery that would cure Plaintiff's Wolff-Parkinson-White syndrome.   They have also denied Plaintiff pills to treat what is described as being a painful and humiliating excessive growth of tissue on Plaintiff's chest.

It is further alleged that Dr. Tariq has refused to authorize a special diet for Plaintiff, to prevent constipation, which in turn causes his heart to race.  Plaintiff also requires a special diet

---

[2]   Valium and Ativan are benzodiazepines primarily used to treat anxiety. (http://www.rxlist.com/script/main/mobileart-rx.asp?articlekey=94661&page=6  (last accessed Aug. 4, 2015)).
[3]      Clonidine is used to treat high blood pressure. (http://www.lifescript.com/health/centers/diabetes/alternative_treatments/coenzyme_q10_articles/clonidine.aspx (last accessed Aug. 4, 2015)).

to accommodate his food allergies. He asserts that he is served food trays containing items to which he is allergic, causing an allergic reaction and pain. He contends he has become malnourished and is plagued by hunger pain. Furthermore, Unit Director Lila Lee has instructed staff that even doctor-ordered dietary directives are to be ignored; and she has directed that food items (e.g., deserts) be removed from Plaintiff's trays without cause.

Relative to the aforementioned medical/psychiatric/dietary issues, Plaintiff asserts that CMHC Director Leah Hammel is responsible for a pattern and practice of inadequate care under the *respondeat superior* doctrine, which is a cause of action under Illinois law.

Plaintiff also sees danger on the horizon. He learned that his Valium prescription was slated to end on July 29, 2015 (the day the complaint was signed). Plaintiff asserts that he will die if the Valium withdrawal is not handled properly.

The complaint also includes allegations that "Defendants" falsely labeled Plaintiff as being paranoid, delusional and otherwise severely mentally ill. It is not at all clear, but the Court perceives that Plaintiff is linking his diagnosis with both past *and* present criminal proceedings. He contends Defendants have defamed him and intentionally inflicted emotional distress upon him, all in violation of Illinois law.

All seven defendants are sued only in their individual capacities. Plaintiff seeks compensatory and punitive damages, as well as "injunctive relief."

Based on the allegations in the complaint, the Court finds it convenient to divide the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Defendants were (at a minimum) reckless in their failure to provide proper medical care for Plaintiff's serious medical needs, in violation of the Fourteenth Amendment;
>
> **Count 2:** Director Leah Hammel is responsible under the *respondeat superior* doctrine and Illinois law for a pattern and practice of inadequate medical care; and
>
> **Count 3:** Defendants defamed Plaintiff and intentionally inflicted emotional distress by falsely labeling him as being paranoid, delusional and otherwise seriously mentally ill, in violation of Illinois law.

Any other claims intended by Plaintiff but not recognized by the Court should be considered dismissed without prejudice as inadequately stated under the *Twombly* pleading standard.

## Discussion

### Count 1

Plaintiff Chance's legal status at CMHC is not entirely clear. Legal status is ultimately determinative of the applicable constitutional principles and standard for liability. *See Currie v. Chhabra,* 728 F.3d 626, 629 (7th Cir. 2013). Nevertheless, because Federal Rule of Civil Procedure 8 only requires "notice" pleading, there is no duty to plead legal theories. *See*, e.g., *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011). The Court perceives that the Fourteenth Amendment will control.

> Claims concerning the conditions of confinement of civil detainees are assessed under the due process clause of the Fourteenth Amendment. *See West v. Schwebke,* 333 F.3d 745, 747–48 (7th Cir. 2003). Civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo,* 457 U.S. 307, 321–22, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

*McGee v. Adams,* 721 F.3d 474, 480 (7th Cir. 2013). Similarly, pretrial detainees' claims fall under the Fourteenth Amendment. To make out a claim, a detainee must allege facts tending to show that he had a serious medical condition and that jail staff behaved recklessly in response to

that condition. *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.,* 746 F.3d 766, 775 (7th Cir. 2014).

Wolff-Parkinson-White syndrome and tachycardia can be life-threatening, so a serious medical condition is presumed to be at issue. Plaintiff's many medical issues, while not all appearing to be "serious," are presented as being generally related, so at this early juncture the Court will not attempt to parse the many ailments discussed in the complaint.

The complaint contains allegations regarding the personal involvement of each of the seven named defendants in the allegedly inadequate care Plaintiff received since arriving at the CMHC on May 5. The allegations are generally plausible, although some more so than others. Therefore, the Court will take the allegations as true. If true, and with reasonable inferences drawn, it is plausible that Fourteenth Amendment liability could result for each defendant. *See, e.g., Perez v. Fenoglio*, __F.3d __2015 WL 4092294 (7th Cir. July 7, 2015) (illustrating that questions of fact regarding the basis for professional medical judgment can preclude dismissal). Therefore, Count 1 shall proceed against all defendants.

**<u>Count 2</u>**

Count 2 asserts a supplemental state law claim against CMHC Director Hammel for the pattern and practice of inadequate care, premised upon the *respondeat superior* doctrine.[4]

Under the *respondeat superior* doctrine, an employer may be held liable for the acts of its employees where such acts are committed in the course of employment and in furtherance of the business of the employer. *See Brown v. King*, 767 N.E.2d 357, 361 ( Ill. App. 1st Dist. 2001). However, Director Hammel, who is specifically sued in only her individual capacity, is not

---

[4] The Court does not construe the complaint as containing a constitutional claim premised upon the *respondeat superior* doctrine. In any event, because personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

considered an "employer" or government entity, and the complaint does not state facts from which one could reasonably infer a pattern and practice; rather a series of individual medical decisions appear to have been made—possibly having related physical effects. Hammel was not sued in her official capacity; therefore, Count 2 will be dismissed without prejudice.

### Count 3

Count 3 is premised upon "Defendants" falsely labeling Plaintiff as being paranoid, delusional and otherwise severely mentally ill, and thereby defaming him and intentionally inflicting emotional distress. This claim is problematic in several respects and will be dismissed without prejudice.

Insofar as it is alleged that "Defendants" falsely labeled Plaintiff as being severely mentally ill, it is not reasonable to assume all seven named defendants were involved in labeling Plaintiff. For example, only one is described as a psychiatrist: Dr. Vallabhen. There is no reason to think Unit Director Lila Lee is a medical doctor, psychiatrist, or psychologist, or otherwise involved in diagnosing Plaintiff. In any event, the factual underpinnings of this claim simply do not satisfy the *Twombly* pleading standard. On this basis alone, Count 3 will be dismissed without prejudice.

It is also noted that the various reasons for falsely labeling Plaintiff *appear* to relate to his present criminal case (and possible commitment proceedings), which would weigh against the exercise of supplemental jurisdiction over this state law claim, or at least warrant severance and a stay of this claim, if it were pleaded to state a colorable claim.

### Injunctive Relief

Plaintiff's prayer for relief includes "injunctive relief," and Plaintiff asserts that the lack of proper care is an ongoing, life-threatening situation. A list of loosely related medical incidents are described, and a possible future life-threatening event—improperly handled Valium

withdrawal, which is also linked to Plaintiff's Wolff-Parkinson-White syndrome. Out of an abundance of caution, the complaint is considered to include a motion for temporary restraining order and motion for preliminary injunction. In addition, as Director Hammel will be considered to be sued in her official capacity for purposes of injunctive relief only.

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if:

> (A) specific facts in an affidavit or a verified complaint *clearly* show that *immediate and irreparable injury, loss, or damage* will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED.R.CIV.P. 65(b)(1) (emphasis added). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

A preliminary injunction, unlike a TRO under Rule 65(b), is issued only after the adverse party is given notice and an opportunity to oppose the motion. FED.R.CIV.P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted).

The Court need only address the motion for TRO at this time. For the reasons that follow, the complaint does not clearly show that immediate and irreparable injury, loss, or damage will result if the Court does not immediately intervene so the motion will be denied. Denial shall be without prejudice.

Plaintiff is seeking a different course of treatment. The Court has liberally construed the complaint to state a colorable Fourteenth Amendment claim (accepting at this early point that Plaintiff's many ailments are loosely connected). A TRO, however, requires the Court to examine the allegations more closely, looking for a likely threat of immediate, irreparable injury. The Court is unable to pinpoint a particular ailment that is presently posing irreparable harm. Plaintiff does not indicate that his pulse and heartrate are dangerously elevated at this time, nor does he indicate his constipation and gastrointestinal issues are at or approaching a critical point. Plaintiff's initial symptoms of withdrawal were in May—there months ago. And, his fear that his impending withdrawal from Valium will not be handled properly and will endanger his life seems less dire because his Ativan (another benzodiazepine) has not been completely withdrawn. Lastly, the complaint does not elaborate upon the effects of being denied adequate nourishment; for example, Plaintiff does not describe weight loss.

Although a TRO is not warranted, that is not to say a preliminary injunction is out of the question. Plaintiff's motion for a preliminary injunction will be referred to a magistrate judge for consideration pursuant to Federal Rule of Civil Procedure 65(a). Plaintiff's motion for counsel (Doc. 3) will also be referred for consideration under the principles discussed in *Perez v. Fenoglio*, __F.3d __, 2015 WL 4092294 (7th Cir. Jul. 7, 2015).

## Disposition

**IT IS HEREBY ORDERED** that the Clerk of Court shall have the record reflect that the complaint includes a motion for temporary restraining order, as well as a motion for preliminary injunction. Accordingly, CMHC Director **LEAH HAMMEL** is considered to be sued in her **OFFICIAL CAPACITY** for purposes of securing injunctive relief only.

**IT IS FURTHER ORDERED** that Plaintiff's motion for a temporary restraining order is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that, for the reasons stated, Plaintiff's supplemental state law claims, **COUNT 2 and COUNT 3**, are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 1**, the Fourteenth Amendment claim regarding medical care, shall **PROCEED** against Defendants **LEAH HAMMEL, NURSE CALEB, DR. SUSAN CARR, LILA LEE, DR. GUPTA, DR. TARIQ and DR. VALLABHEN,** in their individual capacities.   As already stated, **LEAH HAMMEL** remains a defendant in her official capacity for purposes of injunctive relief only.

The Clerk of Court shall prepare for Defendants **LEAH HAMMEL, NURSE CALEB, DR. SUSAN CARR, LILA LEE, DR. GUPTA, DR. TARIQ and DR. VALLABHEN** : (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address

shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including consideration of Plaintiff's motion for a preliminary injunction, and his motion for counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 6, 2015**

s/ J. PHIL GILBERT
**United States District Judge**